UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON YOON, an individual, and as Successor in Interest of DECEDENTS YOUNGMI LEE YOON, GRACE YOON, and RACHEL YOON; SANGHYUN LEE, an individual, and as Successor in Interest of DECEDENT SEOKIM KIM-LEE; YUMI LEE, an individual; BAEKGWAN LEE, an individual; JUN HWA LEE, an individual; AND YANGRAE KOOK, an individual,<br><br>      Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>      Defendants. | Case No. 10cv1578 JM(MDD)<br><br>STATEMENT OF DECISION |

  On December 8, 2008, a United States Marine Corp F/A 18D Hornet fighter jet crashed into the family home of Don and Youngmi Lee Yoon located in University City, a community of San Diego, California. The crash incinerated the Yoon home and killed Youngmi Lee Yoon (36 years old); Grace Yoon (15 months old); Rachel Yoon (7 weeks old) and Seokim Kim-Lee (59 years old), the mother of Youngmi.

  Don Yoon, husband of Youngmi and father of Grace and Rachel, was at work at the time of the crash. Ms. Kim-Lee was visiting from Korea, her country of origin and citizenship, and had been providing child care for Grace and Rachel.

1    Due to the negligence of military personnel, the United States admitted sole liability for the
2 crash, fire, and deaths of those who perished.  Plaintiffs in this action are Don Yoon, Sanghyun Lee, the
3 husband of Seokim Kim-Lee, and the three surviving adult children of Ms. Kim-Lee: Yumi Lee,
4 Baekgwan Lee and Jun Hwa Lee, respectively.  Ms. Kim-Lee's mother, Yangrae Kook (89 at the time of
5 her death in November, 2011) is also a named plaintiff with family members duly representing her
6 interests.  All plaintiffs seek compensation for non-economic losses.  Plaintiffs Don Yoon and Sanghyun
7 Lee also seek compensation for economic losses.
8    A three-day court trial pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§2671-
9 2680, began on December 12, 2011 and concluded on December 14, 2011 with the arguments of all
10 parties.  Plaintiffs have requested damages totaling approximately $56 million while the government has
11 requested "fair and reasonable compensation" to be awarded without reference to any specific monetary
12 sum(s).
13    After hearing testimony from all parties[1] and considering the arguments and relevant law, the
14 court issues the following Statement of Decision.

## EVIDENTIARY RECORD

16 The following summarizes the testimony of the witnesses presented at the time of the evidentiary
17 hearing.

**Sanghyun Lee**

19    Sanghyun Lee, 67, was the first witness Plaintiffs called to testify.  Mr. Lee and his wife, Seokim
20 Kim-Lee (sometimes referred to as "Seokim"), had been married for 36 years at the time of the crash,
21 the only marriage for either, and had raised their four children, Youngmi Yoon, Yumi Lee, Baekgwan
22 Lee and Jun Hwa Lee in a rural village in the southwest countryside of South Korea.  Seokim worked in
23 a factory while Mr. Lee tended to his cattle and farmed.
24    Mr. Lee and Seokim were devoted to one another with "plans and dreams" that included
25 additional travel and extended family activity and events.  Mr. Lee has not done anything since the loss

---

[1] Ms. Kook's interests were advanced through the testimony of several members of the Lee family.

1  of Seokim and has "lost everything." He is alone and feels "unspeakably sad" at events such as family
2  weddings.

3       Mr. Lee described the relationships between Seokim and their children as "so close," words
4  "cannot express" his thoughts. Family was the most important thing for Seokim. Once Yumi left home
5  for school and work, Seokim and Yumi would talk often by phone and Yumi would visit at least once
6  per month. After Baekgwan left home for his studies in Seoul, Korea, he returned to live with his
7  parents. Mr. Lee described Baekgwan as being so close to his mother, Seokim, Baekgwan had no desire
8  to marry. Mr. Lee described the relationship of Jun Hwa, the youngest son, and Seokim in similar
9  terms.

10       Youngmi, being the oldest of the four Lee children, embraced the responsibility of helping to
11  raise her younger siblings. Youngmi and Mr. Lee were close, and Youngmi attended a college only
12  twenty minutes from home. This allowed Youngmi to live at home until the age of 23 when she
13  graduated from college.

14       Once Youngmi moved to the United States and married Don Yoon, Mr. Lee and Youngmi would
15  speak often via internet communication. Mr. Lee considered Don Yoon to be a good son-in-law who
16  treated Youngmi very well. Youngmi repeatedly told Mr. Lee she was very happy in her marriage. Mr.
17  Lee did not attend Youngmi's wedding in the United States because Youngmi told him another
18  ceremony was planned in South Korea. The distance between Mr. Lee and Youngmi after Youngmi
19  moved did not make their relationship "less" than it had been.

20       Photographs and video clips of Mr. Lee and his granddaughter, Grace, taken in South Korea
21  when Youngmi and Don Yoon allowed Seokim to take Grace to South Korea for an extended visit,
22  showed Grace to be happy while among her South Korean relatives.

23       On cross examination, Mr. Lee testified that after Youngmi graduated from college, she moved
24  to Seoul, about 3 ½ hours away, to begin her work in nursing at a university hospital. Youngmi never
25  returned home to live with her parents thereafter. When Youngmi moved to the United States, it was
26  against the wishes of her father.
27  / / /
28

Seokim first came to the United States in about July, 2007, just before Grace was born in August, 2007 and returned to South Korea six months later with Grace. Grace lived with Seokim and Mr. Lee for several months. Seokim then returned to the United States in December, 2008.

The mother of Seokim, Plaintiff Yangrae Kook ("Yangrae"), lived in South Korea with a daughter-in-law. Seokim and Mr. Lee would take vegetables to Yangrae, who received food from other sources as well. Yangrae received a government pension of approximately $90 per month which she used to help with her daughter-in-law's expenses. On occasion, Mr. Lee would drive Yangrae to a doctor's appointment. After the crash, Yangrae would receive vegetables and rides from Mr. Lee as before.

**Baekgwan Lee**

Baekgwan Lee ("Baekgwan"), the third oldest child of the four children of Seokim and Mr. Lee, testified that he and all his siblings graduated from college even though their parents did not attend college. Baekgwan is an electrical engineer who was living with his parents at the time of the crash.

Baekgwan described his mother, Seokim, as a very caring, considerate person, and as someone who would sacrifice everything for her family. Although they lived in a small town in the South Korean countryside, people would always gather at their home as people loved Seokim. People "envied" Baekgwan's parents and their relationship. Baekgwan's parents farmed and traveled together a lot. They loved each other.

Baekgwan married in April, 2010. His mother's absence at the wedding was difficult as she would have been the happiest of everyone. Seokim wanted Baekgwan to marry. Baekgwan misses his mother's warmth, advice, and just holding her.

Baekgwan has noticed that his father, Mr. Lee, smiles less and has stopped raising cows. He has lost his motivation to love. Before the crash, Baekgwan witnessed his father calling and skypeing often to Seokim and Youngmi.

Baekgwan observed Seokim help her mother, Yangrae, and give her money.

**Yumi Lee**

Yumi Lee ("Yumi"), Youngmi's younger sister, and the second of the four children of Seokim and Mr. Lee, grew up in the Lee family home and went to college, which was unusual for rural women.

However, Seokim and Mr. Lee wanted to educate all their children; consequently, each of the children had to study and attend college. Youngmi paid the college tuition for all her siblings. Yumi lived in the family home until the age of 25. After Yumi married, she and her husband would visit her parents often, and Seokim would be waiting for them near the entrance to their village. The aromas of flowers and food would await their arrival at the Lee home.

Yumi and her older sister, Youngmi, went to school together. Youngmi worked at Sacred Heart Hospital of Han Lin University as a nurse in the psychiatric department. Youngmi provided medications and helped with the management of psychiatric patients by reading to them and through exercises. Youngmi also worked as a registered nurse in the OB/GYN department at Lee Young Sun hospital in areas of testing and diagnostics. Youngmi worked as a registered nurse for a total of ten years in South Korea.

Yumi herself worked as a nurse in clinical pathology in a hospital setting.

**Jun Hwa Lee**

Jun Hwa Lee ("Jun Hwa") the youngest of the four Lee children, was nicknamed "baby boy" and was made to "feel special" by his mother, Seokim. At trial, Jun Hwa found it difficult to express in words his love for his mother.

Seokim instilled in Jun Hwa the four missions of a man: (1) education, which Jun Hwa met by studying mechanical engineering; (2) military service, which Jun Hwa performed; (3) a good job, which Jun Hwa acquired by working in subway maintenance management; and (4) to marry well, which Jun Hwa also accomplished. Jun Hwa lived at home with his parents until marrying at the age of 28.

Upon his mother's death, Jun Hwa lost the advice she would provide as well as the chance to fulfill his family duties to his mother. Jun Hwa still pretends his mother is with him.

Jun Hwa has observed his father to be weak after Seokim's death and not to eat well.

**Valerie Owens**

Ms. Valerie Owens, a registered nurse and Director of Nursing at Kearny Mesa Convalescent Hospital ("KMCH") for ten years, hired Youngmi when she applied for a nursing position at the hospital. At the time Youngmi was hired, she was a registered nurse, duly licensed by the State of California. Ms. Owens observed Youngmi to be delightful, warm, caring, and very genuine in her

concern to take care of other people.  Youngmi was hired as a medication nurse even though she was a licensed registered nurse because there was no opening for Youngmi as a registered nurse during the time she was at KMCH.  Youngmi received pay increases, but no advancement in position.  In the opinion of Ms. Owens, Youngmi would have been a good candidate to fill a registered nurse opening.

Youngmi was like a sister to Ms. Owens.  She worked hard at KMCH and had no problem communicating in English with the residents.  Youngmi told Ms. Owens of her plans to work as a registered nurse in a larger facility, something Ms. Owens felt Youngmi would succeed at.

**Ok Hee Park**

Ms. Ok Hee Park first met Youngmi in South Korea in 2003 while both were studying for their registered nurse exam for New York and California.  They became friends during the registered nurse preparatory course and then closer after that.  Ms. Park told Youngmi about her brother-in-law, Don Yoon.  Youngmi and Don Yoon began to correspond by email.  Eventually, Youngmi came to the United States to meet Don.  They quickly married thereafter.  Youngmi told Ms. Park of her desire to work asa registered nurse at a large hospital such as Sharp or Scripps.

Ms. Park has observed changes in her brother-in-law, Plaintiff Don Yoon, since the death of Youngmi.  He misses his wife and children.

**Aesuk Park**

Ms. Aesuk Park, the older sister of Don Yoon, has lived in the United States since 1983 and in Chula Vista since 2005.  Mr. Yoon now lives with his sister and is self-employed as a wholesaler of general merchandise.

After Youngmi and Don married, they were happy and loved each other very much.  They would attend church together and walk and hike.  They showed affection.  Don would think about his children all the time.  They were a happy family.

Since the crash, Don has lost everything: his smile, his happiness.  Their home is now like a jail, no one visits.

/ / /

/ / /

/ / /

**John Park**

Mr. John Park lived in the same South Korean village as Don Yoon's family and eventually married Don Yoon's sister. He and Don lived together when Don first arrived in the United States and observed Don to be wonderful with kids.

Mr. Park was aware of Youngmi's habit of calling Don while he would be driving home from work so that she could time his food to be hot upon his arrival. Before the crash, Don was a comedian, making everyone laugh. He adored Youngmi and the kids and was loyal and faithful to family. Now Don is heartbroken and doesn't smile or talk.

**Kevin Yun**

Mr. Kevin Yun, Don's older brother, testified that he would visit Youngmi and Don once or twice a year from South Korea. He observed that Youngmi changed Don for the better, i.e., she improved his eating habits. Before the crash, Don was humorous, told jokes, and adored kids. Now, he doesn't smile or see people. He stays home with the exception of daily visits to the graves of his family. He rests there.

**Don Yoon**

Mr. Don Yoon testified on December 13, 2011, three years to the day he buried his wife, Youngmi, and two daughters, Grace and Rachel, in one casket, at the cemetery he visits daily to the present time.

Mr. Yoon was born in 1970 in South Korea and, after graduating from high school, came to the United States at age 18. At the time, he saw the United States as a land of opportunity. He became a United States citizen, obtained an AA degree in business administration and, according to the testimony of a sibling, attended UCSD Extension to study English.

It was important to Mr. Yoon to wait for the right person when considering marriage and a family. He met Youngmi through his sister-in-law who, in turn, knew Youngmi's study partner in nursing in South Korea. Mr. Yoon and Youngmi communicated through email for six months. In November, 2004, Youngmi came to the United States to meet Mr. Yoon. They immediately "hit it off," attended church together and quickly decided to marry. They married on December 25, 2004, Christmas Day. Mr. Yoon was 34 at the time of his wedding and Youngmi was 32.

When Youngmi first arrived in the United States, she enrolled in school to improve her English, and had volunteered about one hundred hours at a hospital before securing a job at KMCH. According to Mr. Yoon, his wife liked working at KMCH and her co-workers. She enjoyed nursing and helping people, and it was her goal to work in a large San Diego hospital. During the first 15 months after their marriage, Youngmi had contacted larger hospitals but was unsuccessful in securing an interview. It had been Youngmi's intention to resume her efforts to work in such a hospital in 2009, after the birth of Rachel, and had been studying English daily.

The Yoons were married for three years before Grace was born. During that time, the Yoons enjoyed traveling, cruising, and skiing together. Youngmi was "a great cook" and helped her husband change his eating habits.

The Yoons' first daughter, Grace, was born in August, 2007. Seokim arrived shortly before the birth of Grace to provide childcare. Seokim stayed for approximately six months and then returned to South Korea with Grace in August of 2008. It had been a difficult decision to let Grace travel to South Korea with Seokim, but the Yoons preferred to have Grace with family rather than in daycare during Youngmi's pregnancy with Rachel. The Yoons called South Korea every day while Grace was there. The Yoons' second daughter, Rachel, was born in October, 2008.

After the crash, Mr. Yoon lost the love of his life and his daughters. They were taken from him in one day. He looks forward to reuniting with them one day. "That is all I have to look forward to."

**Peter Formuzis**

Dr. Peter Formuzis possesses a Ph.D. in economics and has 25 years of teaching experience at the university level and 20 years of private consulting as a forensic economist. He was called by Plaintiffs as their expert on economic damages. Working with a set of assumptions, Dr. Formuzis rendered opinions.

For his calculations on loss of earnings, Dr. Formuzis assumed Youngmi Yoon would be on maternity leave for six months following the birth of Rachel, and would then return to KMCH for one year in her position as a medications nurse, earning $46,000 per year. Assuming the San Diego job market to be good for those seeking a position as a registered nurse, Dr. Formuzis then assumed Youngmi would secure a registered nursing position at a large San Diego hospital in 2010 starting at the

25th salary percentile for registered nurses, or $69,900 per year. Dr. Formuzis then moved her up to the 75th percentile over a ten-year period, or to the level of $99,000 per year further enhanced by wage increases of 4.8% yearly. Dr. Formuzis further assumed Youngmi would work to the age of 65. Dr. Formuzis factored in deductions for personal consumption ranging from 42% to 28%, and taxes of 14% in addition to adding the value of fringe benefits. Finally, Dr. Formuzis used a discount rate of .5% reflecting interest on 3-5 year treasury securities, an investment which Dr. Formuzis believed to possess the requisite degree of safety. Dr. Formuzis eschewed the use of municipal bond rates for discount value as he deemed them too risky.

Based on the foregoing assumptions, Dr. Formuzis pegged the loss of past earnings of Youngmi at $85,479 and the loss of future earnings at $1,475,958 with retirement at age 65, and at $1,831,074 with retirement at age 70.

Dr. Formuzis calculated past loss of Youngmi's home services to be $39,279 and the future loss of such services to range from $492,603 to $609,331 depending on variations of work life expectancy (to age 65 or 70) and life expectancy (from normal to 90 years of age based on an assumption regarding family longevity).

**Paul Zimmer**

Paul Zimmer, a licensed California certified public accountant, called by the government, worked from a different set of assumptions in reaching his conclusions of economic loss.

With respect to the loss of Youngmi's earnings, Mr. Zimmer assumed annual wages of $50,000 per year augmented by 20% for benefits, reduced by 14% for taxes, further reduced by 16-35% for personal consumption, and increased 3% per year for wage growth. Mr. Zimmer used a work life expectancy of 20 years, or to age 57, and further assumed Youngmi would continue working in a position tantamount to a medication or licensed vocational nurse and not as a higher-paid registered nurse. Finally, Mr. Zimmer used a different discount rate than Dr. Formuzis used, one pegged to municipal bond interest rates, concluding that any additional risk of municipal insolvency still fell within the standard required for safe investment.

With those assumptions, Mr. Zimmer opined that the past wage loss was $63,072 and the past loss of household services was $13,768. Mr. Zimmer pegged the loss of Youngmi's future earnings at

$450,467 with retirement at 57 and at $711,945 with retirement at age 65.  Mr. Zimmer calculated the loss of Youngmi's future household services to be at $196,563.

**Stipulations**

The parties stipulated that the loss of the Yoons' personal property destroyed in the crash and fire to be the sum of $65,000, and the economic loss for Sanghyun Lee, husband of Seokim Kim-Lee, to be the sum of $230,000.

## Legal Standards

This action was brought under the FTCA with admitted liability by the United States government for the deaths of decedents Youngmi Yoon, Grace Yoon, Rachel Yoon, and Seokim Kim-Lee, as a result of a United States Marine Corps F/A 18D aircraft crashing into the Yoon family home in San Diego. Plaintiffs have complied with the administrative claim filing requirements.

What constitutes reasonable compensation for Plaintiffs' recoverable losses and damages is the sole question to be determined by the court.  In California, the measure of damages for wrongful death is addressed by statute and case law.  California law allows a surviving spouse, among others, to recover damages in a wrongful death action.  As a general matter, damages are measured by the financial benefits heirs were receiving at the time of death and those reasonably expected in the future as well as the monetary equivalent of the loss of the decedents' advice, training, love, companionship, comfort, affection, society and solace or moral support.  See Code of Civ. Procedure §377.60-377.61; Corder v. Corder, 41 Cal. 4th 644, 661-662 (2007); Krouse v. Graham, 19 Cal. 3d 59, 69 (1977); Rufo v. Simpson, 86 Cal.App. 4th 573, 614 (2001); Judicial Council of California, Civil Jury Instructions (CACI), Fall 2011 Edition, Volume 2, §§3920-3921.  Non-economic damages are recoverable by the spouse of a decedent, and by the parent of a decedent, or by a minor child.  A plaintiff has the burden of establishing, by the weight of the evidence, entitlement to monetary damages.  CACI, §200.

The parties are in general agreement that Plaintiff Yangrae Kook may recover damages only if she has established through her representatives that she was actually financially dependent, to some extent, upon Seokim Kim-Lee, her daughter, for the "necessaries of life."  See Foster v. City of Fresno, 392 F. Supp.2d 1140, 1146 (E.D.Cal.2005).

As the foregoing authorities establish, no damages may be awarded for the grief or sorrow of a surviving heir.  The loss of "society, comfort and protection" of a child may be considerable where the decedent had demonstrated a "kindly demeanor," or rendered assistance.  See Corder, 41 Cal.4th at 661-662.

In determining non-economic damages, a court must analyze each individual case, mindful of what awards have been made in other cases involving similar types of losses.  This court has carefully considered the references of other awards attached as exhibits in the trial briefs.  Those cases demonstrate that the range of recovery in wrongful death cases is vast depending on the circumstances of a particular case, and that no amount of reasonable compensation can truly make one whole for the loss of a loved one, especially where, as in the present case, each decedent was kind, loving and an integral part of an exemplary family.

## Analysis and Findings

By all accounts, the crash of the U.S. Marine Corps F/A 18D aircraft into the Yoon family home on December 8, 2008 stunned the greater community of San Diego as well as the military establishment which has considered San Diego a long-time home.[2]  While much of the public sentiment and sadness centered upon Don Yoon, who lost his wife and daughters in the crash, the evidence presented in this trial revealed how other families situated in the cities and countryside of South Korea also suffered great loss as a result of Ms. Seokim Kim-Lee perishing in the crash.  Indeed, this analysis shall begin with the recognition that, as disclosed by the evidence, Ms. Kim-Lee was an extraordinary woman whose profound and loving influence greatly molded, directly or indirectly, virtually every Plaintiff in this case.  And it's that remarkable influence which informs and helps to measure what fair and reasonable compensation should be awarded in this case.

Ms. Kim-Lee, 59 at the time of her death, along with her husband, Sanghyun Lee, 67 at the present time, raised four children in the southwest countryside of South Korea, including Youngmi Lee Yoon (hereafter Youngmi), who perished in the crash.  The evidence reveals that Ms. Kim-Lee was a remarkable woman, imbued with a love of life, family and traditional South Korean values.  The Lee

---

[2] The court takes judicial notice of the extensive media coverage surrounding the tragedy of December 8, 2008.

1  home was one of warmth, where family and village residents congregated to celebrate milestones as
2  well as regular visits of friends and family members.  At the same time, Ms. Kim-Lee was a modern
3  woman who provided advice and guidance to each and every one of her four children.  Perhaps her
4  influence was best described in the testimony of her son, Jun Hwa, as he related the four missions of
5  man, as told by his mother, all of which he faithfully followed to completion.  With the loving influence
6  of Ms. Kim-Lee, each of the children prepared for, enrolled in, and completed college.  Each has
7  pursued a professional career since - - all beginning from a farming village in the South Korean
8  countryside.  Of course, it is no surprise that Ms. Kim-Lee and her husband had a long-term marriage
9  centered around their mutual love, family, daily routines, and shared interests.  They shared everything
10 together, even Ms. Kim-Lee's factory job when she would be away caring for a grandchild.

11         The character of Ms. Kim-lee was palpable, from the testimony at trial to every photo and video
12 clip that was shown.  The care, comfort, companionship, guidance, and love provided by Ms. Kim-Lee
13 to her family are virtually immeasurable.  Those qualities were expressed in a myriad of ways: from her
14 customary greeting of visiting family members at the village gates, to instilling the missions of a man in
15 her sons, to a willingness to leave the comfort of her own community in order to provide daycare to a
16 newborn grandchild in San Diego. The loss of Ms. Kim-Lee and her profound love and influence has
17 indeed been great and will continue to be a great loss for plaintiffs in the future.

18         Perhaps one measure of how profound Ms. Kim-Lee's influence was on those whom she touched
19 was how her eldest child, Youngmi, turned out.  Youngmi, as the first child, dutifully assisted with the
20 raising of her siblings, took to heart the importance of education as it was stressed by her mother,
21 graduated with a degree in nursing, and then worked ten years as a registered nurse in city hospital
22 settings.  Youngmi was raised in such exemplary fashion that she paid the college tuition for all her
23 siblings and dedicated herself to the healing of others, all the while hoping to find the right man with
24 whom to raise a family.  Later, Youngmi had the confidence and courage to travel to the United States to
25 meet and ultimately marry her husband, Don Yoon.  Without the strength of character nurtured by a
26 loving mother, it is fair to conclude Youngmi may never have lived and loved as she did.

27         Youngmi, the evidence clearly established, was a remarkable young woman in her own right,
28 helping to heal the infirm of mind, providing OB/GYN service to others, and ultimately working with

the elderly in a convalescent hospital.  She, in turn, became a loving health provider, wife and mother providing her own blend of care, comfort, companionship, society, guidance and love to others. Youngmi was devoted to her profession, with ambition sufficient to study for licensure in the United States (in New York and California) as a registered nurse while still in South Korea.  Her drive continued once in the United States, as she studied her English daily and looked to further her nursing career as a registered nurse in a large hospital.  Those qualities continued as she married Don Yoon and organized her life around her work and family.  The evidence establishes Youngmi was a loving and supportive wife, sharing her spiritual life with her husband, converting him to a healthy diet, traveling and recreating together, and creating a new family together.  Youngmi was the love of Don Yoon's life, someone he had waited for and someone who possessed all the qualities he cherished.  The loss of Youngmi with her extraordinary gifts of love, guidance, companionship, care and comfort, once again, practically defies measure.

      The deaths of Grace and Rachel Yoon have deprived Don Yoon of the comfort, companionship, society and love a young child is capable of providing to a new parent and, then, in later life.  By all accounts, the Yoon girls would have been raised with traditional cultural and family values emphasizing love and devotion to parents and family.  The loss of a young child also deprives a parent of the instinctive need to nurture, guide, and love that child.  Don Yoon's loss associated with the death of both his children is substantial and not to be diminished or reduced by the willingness of the Yoons to permit a grandmother to care for their daughters.  Nor is this loss of a nominal nature merely because Grace and Rachel were 15 months and 7 weeks old, respectively, when they perished.

      A preponderance of the evidence establishes that each of Ms. Kim-Lee's three surviving children will suffer the loss of their mother's love, companionship, assistance, affection and moral support.  The testimony has established that Ms. Kim-Lee was intrinsically involved in the lives of her children, even as they married and pursued their professional lives.  Yumi, Baekgwan, and Jun Hwa have lived in the family home until adulthood and each testified to the care comfort, guidance, companionship, love extended to them by their mother.  The loss of their mother and those qualities will be an enduring and significant loss.

1    All parties agree, as reflected in the trial briefs, that in order for plaintiff Yangrae Kook to
2 recover damages, the evidence would have to establish that Ms. Kook was dependent, to some extent,
3 upon her daughter, Ms. Kim-Lee, for the "necessaries of life." Such dependence must be financial, not
4 emotional. See Perry v. Median, 192 Cal. App. 3d 603, 610 (1987); Foster v. City of Fresno, 329 F.
5 Supp. 2d 1140, 1146. The preponderance of evidence establishes that Ms. Kook was not dependent
6 upon her daughter, Ms. Kim-Lee, for the necessaries of life. Rather, Ms. Kook lived with a daughter-in-
7 law, received a government pension, and received vegetables that she required as well as rides to
8 appointments from different sources. Although the Lees provided vegetables for Ms. Kook, and both
9 Ms. Kim-Lee and her husband were able to drive Ms. Kook to medical appointments, financial
10 dependence was not established. Moreover, Baekgwan Lee's observation of his mother giving Ms.
11 Kook money is insufficient, without greater context or explanation, to satisfy the requirement of some
12 level of financial dependence.
13    With respect to the recovery of economic damages by Mr. Yoon, the court finds that each of the
14 economic experts made unwarranted assumptions in reaching their respective conclusions, although the
15 totality of evidence supports Dr. Formuzis' conclusions in larger measure.
16    First and foremost, as the court has already recognized, Youngmi was a person of great drive and
17 ambition, dedicated to furthering her nursing career through study, persistence, and an exceptional work
18 ethic. This finding is buttressed by her studies in South Korea for registered nurse certification in the
19 United States, her ten years of Registered nurse experience in South Korea, her stated desire to work asa
20 registered nurse in a large San Diego hospital, and the assessment of her potential by Director Owens. It
21 is practically inconceivable that Youngmi would have failed in her quest to land such a position, as Mr.
22 Zimmer has assumed she would fail, and merely stayed in her position at KMCH, retiring at the age of
23 57. On the other hand, to assume Youngmi would have in fact reached her goal after a six-month
24 maternity leave, and, thereafter, a one-year return to KMCH, constituted too roseate a prognostication.
25 Rather, it seems more probable that Youngmi would have secured her desired registered nurse position
26 sometime within a five-year window from Rachel's birth – which takes into account the tight registered
27 nursing market referred to by Ms. Owens – and worked until a retirement age of approximately 65.
28 Moreover, a discount rate based upon a bit more of an optimistic economic picture over the expanse of

Youngmi's work life expectancy would seem to be in order.  Finally, the court has carefully considered the qualifications of the respective experts, and their opinions regarding past and future wage losses as well as past and future losses for household services.

### **Conclusion**

Based on the applicable law, the evidentiary record before the court, and the foregoing analysis with findings, the court awards the following sums as fair and reasonable compensation for the losses resulting from the deaths of Seokim Kim-Lee, Youngmi Lee Yoon, Grace Yoon and Rachel Yoon:

1. To plaintiff Don Yoon, the sum of **$1,200,000** for the total wage loss, past and future, of wages Youngmi Yoon would have earned.

2. To plaintiff Don Yoon, the sum of **$250,000** for the total loss of household services, past and future, Youngmi Yoon would have provided.

3. To plaintiff Don Yoon, the sum of **$2,000,000** for past non-economic damages resulting from the death of Youngmi Yoon.

4. To plaintiff Don Yoon, the sum of **$4,000,000** for future non-economic damages resulting from the death of Youngmi Yoon.

5. To plaintiff Don Yoon, the sum of **$65,000** for the loss of personal property.

6. To plaintiff Don Yoon, the sum of **$300,000** for the past non-economic damages resulting from the loss of his daughter Grace Yoon.

7. To plaintiff Don Yoon, the sum of **$1,000,000** for future non-economic damages resulting from the death of his daughter Grace Yoon.

8. To plaintiff Don Yoon, the sum of **$200,000** for past non-economic damages resulting from the death of his daughter Rachel Yoon.

9. To plaintiff Don Yoon, the sum of **$600,000** for future non-economic damages resulting from the death of his daughter Rachel Yoon.

10. To plaintiff Sanhyum Lee, the sum of **$230,000** for economic damages, past and future, resulting from the death of Seokim Kim-Lee.

11. To plaintiff Sanghyun Lee, the sum of **$1,000,000** for past non-economic damages, resulting from the death of Seokim Kim-Lee.

1    12.    To plaintiff Sanghyun Lee, the sum of **$2,000,000** for future non-economic damages, resulting from the death of Seokim Kim-Lee.

    13.    To plaintiff Sanghyun Lee, the sum of **$250,000** for past non-economic damages resulting from the death of Youngmi Yoon .

    14.    To plaintiff Sanghyun Lee, the sum of **$250,000** for future non-economic damages resulting from the death of Youngmi Yoon.

    15.    To plaintiff Yumi Lee, the sum of **$500,000** for past non-economic damages resulting from the death of Seokim Kim-Lee.

    16.    To plaintiff Yumi Lee, the sum of **$1,000,000** for future non-economic damages resulting from the death of Seokim Kim-Lee.

    17.    To plaintiff Baekgwan Lee, the sum of **$500,000** for past non-economic damages resulting from the death of Seokim Kim-Lee.

    18.    To plaintiff Baekgwan Lee, the sum of **$1,000,000** for future non-economic damages resulting from the death of Seokim Kim-Lee.

    19.    To plaintiff Jun Hwa Lee, the sum of **$500,000** for past non-economic damages resulting from the death of Seokim Kim-Lee.

    20.    To plaintiff Jun Hwa Lee, the sum of **$1,000,000** for future non-economic damages resulting from the death of Seokim Kim-Lee.

    21.    To plaintiff Yangrae Kook, the sum of **$0** for past and future non-economic loss resulting from the death of Seokim Kim-Lee.

    Plaintiffs are to prepare a final judgment in accordance with this Statement of Decision.

**IT IS SO ORDERED**

DATED:  December 28, 2011

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All parties